Filed 5/1/14  P. v. Hernandez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VICTOR RENE HERNANDEZ,<br><br>Defendant and Appellant. | C071523<br><br>(Super. Ct. No. 11F04330) |

A jury convicted defendant Victor Rene Hernandez of lewd and lascivious acts with a child under age 14, oral copulation by a person over 21 years of age with a person under age 16, and sodomy by a person over 21 years of age with a person under age 16. The trial court sentenced defendant to 27 years 8 months in prison and awarded 292 days of actual presentence credit, but indicated that conduct credit would be determined by the Department of Corrections and Rehabilitation.

1

Defendant now contends the trial court erred in (1) denying his *Pitchess* motion[1] seeking disclosure of the personnel records for the investigating police detective; (2) refusing to release the victim's psychological treatment records; (3) admitting expert testimony regarding child sexual abuse accommodation syndrome; (4) declining a special instruction requested by defendant that would have guided the jury's reliance on the expert testimony regarding child sexual abuse accommodation syndrome; (5) allowing the victim's father and brother to describe the victim's statements regarding the details of the offenses; and (6) improperly delegating the calculation of conduct credit to the Department of Corrections and Rehabilitation.

We agree with defendant's sixth contention that the trial court must calculate his conduct credit. We will remand the matter to the trial court with directions to calculate defendant's presentence credit and amend the abstract of judgment. We will affirm the judgment in all other respects.

BACKGROUND

The victim testified that defendant (his maternal uncle) engaged in sexual contact with him, beginning when the victim was in sixth grade and ending after his freshman year in high school. The sexual contact began with touching but eventually included multiple episodes of oral and anal sex. Toward the end of the multi-year period, the victim said he asked defendant to stop the sexual contact at least five times. Eventually, the victim reported the conduct to his father and brother. When the family confronted defendant about the offenses, defendant nodded in the affirmative.

After the police were contacted, Detective Andrew Bates with the Folsom Police Department conducted an investigation. Detective Bates also arranged for the victim to be interviewed by an expert in child sexual abuse.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), which authorizes the disclosure of law enforcement personnel records in limited circumstances.

2

Months before trial, defendant filed a *Pitchess* motion, asserting that the poor quality of the police investigation justified production of the investigator's personnel records so that defendant could determine whether the investigator had been adequately trained or had ever been criticized for inadequate investigation. The trial court denied the motion, ruling that defendant had not shown good cause for disclosure.

In a motion in limine, defendant argued that he had subpoenaed the victim's psychological treatment records and that an interpretation of Proposition 9 (the Victims' Bill of Rights Act of 2008: Marsy's Law) to create an absolute privilege against disclosure of such records is unconstitutional. The trial court said it would follow *People v. Hammon* (1997) 15 Cal.4th 1117, 1119, 1128 [trial court is not required, at pretrial stage, to review or grant discovery of privileged information in the hands of third-party psychotherapy providers]. The trial court also said it had reviewed the records and the anticipated witness testimony, focusing especially on the possibility of inconsistent statements by the victim, and it did not see anything in the records warranting disclosure. To the extent defendant was claiming that Proposition 9 is unconstitutional, the trial court rejected that claim.

In another motion in limine, defendant sought exclusion of expert testimony regarding child sexual abuse accommodation syndrome (CSAAS), or in the alternative, for a special instruction on how the jury should apply the CSAAS evidence. Expert testimony on CSAAS may be offered to explain a victim's failure to report, or delay in reporting, sexual abuse. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.) Such expert testimony is not admissible to prove that the offenses occurred, but it may be admissible to disabuse the jury of myths or misconceptions it might hold about how a child reacts to a sexual offense. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744.) The trial court denied the motion in limine, stating that the expert had testified in the trial court previously, the trial court was generally familiar with what the expert would say regarding CSAAS, and it was the trial court's experience that some of the myths about

3

which the expert would testify are still commonplace. Thus, the trial court would permit the expert to testify, but would exercise its discretion under Evidence Code section 352 to discourage testimony regarding factors not presented by the evidence in the case. The trial court also indicated it would give CALCRIM No. 1193 [testimony on CSAAS] rather than the special instruction requested by defendant.

In addition, defendant made a motion in limine seeking to prevent the victim's father and brother from describing the victim's statements regarding the details of the offenses. The trial court denied the motion, ruling that some details were admissible to establish context; but the trial court would exercise its discretion under Evidence Code section 352 to prevent excessive detail, and it would give a limiting instruction at the time the evidence was presented. The trial court subsequently instructed the jury that the statements were not admitted for the truth but as evidence about the circumstances of the disclosures.

The jury convicted defendant on 12 counts of lewd and lascivious acts with a child under age 14 (Pen. Code, § 288, subd. (a) -- counts one through twelve), two counts of oral copulation by a person over 21 years of age with a person under age 16 (Pen. Code, § 288a, subd. (b)(2) -- counts thirteen and fourteen), and two counts of sodomy by a person over 21 years of age with a person under age 16 (Pen. Code, § 286, subd. (b)(2) -- counts fifteen and sixteen). The trial court sentenced defendant to 27 years 8 months in prison and awarded 292 days of actual presentence credit, but indicated that conduct credit would be determined by the Department of Corrections and Rehabilitation.

DISCUSSION

I

Defendant contends the trial court erred in denying his *Pitchess* motion seeking disclosure of the personnel records for Detective Bates.

Although peace officer personnel records are generally confidential, they may be discoverable in specified circumstances. (Pen. Code, § 832.7, subd. (a).) A defendant

4

"must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).) To establish materiality, the defendant must present a specific and plausible factual scenario of officer misconduct (*id*. at pp. 1016, 1025; *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316), a logical link between the defense proposed and the pending charge, and how the discovery being sought would support such a defense or how it would impeach the officer (*Warrick, supra,* 35 Cal.4th at p. 1021).

A trial court applies common sense in determining what is plausible, and it makes its determinations based on a reasonable and realistic assessment of the facts and allegations. (*People v. Thompson, supra,* 141 Cal.App.4th at pp. 1318-1319.) A defendant's showing must be internally consistent and complete. (*Id*. at p. 1317.) When a defendant merely says an officer will testify and might testify falsely, there is no good cause. (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1023-1024.)

"If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance." (*Warrick, supra,* 35 Cal.4th at p. 1019.) We review denial of a *Pitchess* motion for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 826.)

Defendant's *Pitchess* motion was accompanied by a supporting affidavit, filed under seal. The affidavit said that based on the statements made by Detective Bates at the preliminary hearing regarding his background and training, he appeared to have conducted the investigation without having obtained appropriate training. The affidavit also said Detective Bates conducted an insufficient investigation, failed to discover relevant facts, and prepared inadequate statements.

5

After reviewing the *Pitchess* motion, the trial court found that defendant had not shown good cause for review of the investigator's personnel records and denied the motion.

Defendant has not identified any evidence in support of his motion other than the affidavit filed under seal by his attorney. Our review of the affidavit supports the trial court's ruling.

As the trial court noted, defendant's burden to show good cause was relatively low. (*People v. Thompson, supra,* 141 Cal.App.4th at p. 1316.) Nonetheless, defendant's *Pitchess* motion did not show how the discovery being sought would support defendant's defense or how it would impeach the officer. Asserting that the detective did not obtain all relevant information does not necessarily indicate, without more, that the information actually obtained by the detective was wrong.

A defendant's claim that he never made the incriminating remarks attributed to him in a testifying officer's report was not enough to establish good cause, at least not without a plausible " 'alternate version of the facts.' " (*People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1340-1341.) But here, defendant flatly denied the charges against him, and did not assert a plausible alternate version explaining why the detective would have falsified evidence or committed misconduct. He suggested that a better investigator would have uncovered evidence casting him in a better light or the victim in a worse light, but that is not enough to establish abuse of discretion. (See *People v. Samayoa, supra*, 15 Cal.4th at pp. 826-827 [no abuse of discretion to deny disclosure of personnel records when defense counsel alleged coercion of confession but did not allege that officer fabricated charges, committed violence or obtained evidence by false arrest or illegal search or seizure].)

The trial court did not abuse its discretion in declining to review the detective's personnel records.

## II

Defendant next contends the trial court erred in refusing to release the victim's psychological treatment records.

A defendant has a constitutional right to have a court determine whether potentially relevant but arguably privileged records must be disclosed for use at trial. (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 57 [94 L.Ed.2d 40, 57].) On appeal, we review the records that were not disclosed to determine whether they are material and should have been disclosed. (*People v. Martinez* (2009) 47 Cal.4th 399, 453-454.)

Defendant claims the victim's psychological records "may well have disclosed crucial discrepancies" between statements the victim made to treatment professionals and statements he made at trial. But in ruling on the motion in limine, the trial court said it had reviewed the treatment records and the anticipated witness testimony, focusing especially on the possibility of inconsistent statements by the victim, and it did not see anything in the records warranting disclosure.

We have reviewed the records that were not disclosed, and determined that there is nothing in them that is materially inconsistent with the victim's trial testimony, and nothing that should have been disclosed.

## III

Defendant further contends the trial court erred in admitting expert testimony regarding CSAAS.

CSAAS testimony must be tailored to the evidence in a given case, targeting specific myths or misconceptions suggested by the facts at issue. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 393.) Where the victim's credibility is at issue, it may be used in the prosecution's case-in-chief. (*People v. Patino, supra,* 26 Cal.App.4th at p. 1745.)

Defendant urges California courts to reconsider the admissibility of CSAAS, noting that four other states have decided to routinely exclude it. But he acknowledges

7

that we are bound by California precedent on this subject. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant also acknowledges that we review the trial court's ruling for abuse of discretion. Here, defendant has not established that the trial court abused its discretion in admitting the CSAAS evidence. The testimony was relevant because the victim did not promptly report the abuse. And the trial court explained that in its experience, some of the myths about which the expert would testify are still commonplace, although the trial court said it would exercise its discretion under Evidence Code section 352 to discourage testimony regarding factors not presented by the evidence in the case. Moreover, the trial court allowed defendant to call his own expert, who testified that professionals do not agree about CSAAS, and children sometimes lie about sexual abuse to get attention or escape punishment.

The trial court did not abuse its discretion.

IV

In addition, defendant claims the trial court erred in declining a special instruction requested by defendant that would have guided the jury's reliance on the CSAAS evidence.

The special instruction requested by defendant stated: "You have heard testimony from Anthony Urquiza, Ph.D. regarding [CSAAS]. [¶] [CSAAS] research is based upon an approach that is completely different from that which you must take in this case. The syndrome research begins with the assumption that a molestation has occurred, and seeks to describe and explain common reactions of children to that experience. As distinguished from that research approach, you are to presume that the defendant is innocent. The [P]eople have the burden of proving guilt beyond a reasonable doubt. As such, testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him." Defendant says the instruction was based on CALJIC No. 10.64 and *People v. Bowker, supra*, 203 Cal.App.3d at page 394.

8

Trial courts have a *sua sponte* duty to instruct a jury that CSAAS evidence (1) is admissible solely for the purpose of showing that the victim's reactions, as demonstrated by the evidence, are not inconsistent with having been molested, and (2) the expert testimony is not intended, and cannot be used, to determine whether the victim's molestation claim is true. (*People v. Housley* (1992) 6 Cal.App.4th 947, 958-959.)

Defendant argued in the trial court that his proffered instruction was better than CALCRIM No. 1193, claiming that the special instruction was "clearer and more direct about the fact that the jury cannot use [CSAAS] information as a litmus test for guilt or innocence." The court disagreed, deciding it would "stick with the CALCRIM instruction. I think it's clearer. It's not argumentative. It's accurate." Accordingly, the trial court instructed the jury, consistent with CALCRIM No. 1193, as follows: "You have heard testimony regarding [CSAAS]. Testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [the alleged victim's] conduct was not inconsistent with the conduct of someone who has been molested and in evaluation -- and in evaluating the believability of his testimony."

The CALCRIM instructions replaced CALJIC instructions and are now " 'viewed as superior' " to them. (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1188.) The CALJIC instruction stated that the syndrome research was based on "an approach that is completely different from" the jury's, beginning with "the assumption that a molestation has occurred." (CALJIC No. 10.64.)

An argument similar to defendant's was rejected in *People v. Gilbert* (1992) 5 Cal.App.4th 1372. There, a defendant argued that an instruction was not " 'strong enough' " because it did not advise the jury that the CSAAS research begins by assuming that molestation has occurred. (*Id*. at p. 1386-1387.) The court in *Gilbert* acknowledged that the "assum[ing]" language came from *People v. Bowker, supra*, 203 Cal.App.3d at page 394, italics omitted. (*People v. Gilbert, supra,* 5 Cal.App.4th at p. 1387.) But the

court in *Gilbert* observed that the language was "intended to make the opinion clear to the attorney or judge who read it and not to be incorporated . . . in an instruction to the jury." (*Ibid*.) The court said it would be unnecessary, and potentially confusing and misleading, to instruct the jury that CSAAS research began by assuming molestation had occurred. (*Ibid*.)

Here, we agree with the trial court that defendant's proffered special instruction was argumentative and unnecessary, and that CALCRIM No. 1193 was accurate and sufficient as a limiting instruction regarding CSAAS evidence. The trial court did not commit instructional error.

V

Defendant further claims the trial court erred in allowing the victim's father and brother to describe the victim's statements regarding the details of the offenses.

The trial court said the proffered evidence was subject to the "fresh complaint" doctrine, that some details of the offenses were admissible to establish context, but the trial court would exercise its discretion under Evidence Code section 352 to prevent excessive detail, and it would give a limiting instruction at the time the evidence was presented. The trial court subsequently instructed the jury that the statements were not admitted for the truth but as evidence about the circumstances of the disclosures. Defendant did not object to the limiting instruction.

The victim's father testified that the victim told him he and defendant had engaged in "every kind of sex" including "oral and anal sex." Later, the victim's brother testified about an incident that occurred when the victim was in sixth grade. The brother said the victim grabbed a knife during a trivial argument and barricaded himself in their shared bedroom, saying, "You don't know what I've gone through," and "You don't know how it feels. You don't know what [defendant] has done to me. You don't know what it feels like to be told 'suck it or die.' You don't know what he's made me do." The brother

10

testified that on another occasion -- when the victim was in tears over an argument with the boys' father -- the victim said defendant had sodomized him more than once.

Defendant claims the evidence was hearsay. But the fresh complaint doctrine provides that "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose -- namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others [when the disclosure and its circumstances] are relevant to . . . whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749-750, 755-756; see also *People v. Burton* (1961) 55 Cal.2d 328.) According to the Supreme Court, the bare fact that a victim made a complaint would be "meaningless" and "immaterial" unless it also included sufficient detail for the jury to infer that the complaint related to the matter at issue. (*People v. Burton, supra,* 55 Cal.2d at p. 351.) Thus, relevant fresh complaint evidence is admissible if its probative value outweighs its prejudicial effect under Evidence Code section 352. (*People v. Brown, supra,* 8 Cal.4th at p. 760.)

Defendant claims the detail went too far, that the trial court should not have admitted statements from the father that defendant had engaged in "every kind of sex" including "oral and anal sex" and from the brother that the victim said defendant told him to "suck it or die." Those statements, he contends, improperly corroborated the victim's trial testimony and thereby caused a "miscarriage of justice." We disagree.

The trial court instructed the jury that the statements were not offered for the truth, were not offered as evidence that the offenses actually occurred. They were offered solely to provide the context in which the statements were made. Defendant did not object to the limiting instruction, and we presume the jury followed the instruction. As so limited, the evidence was a proper and admissible use of the statements. Moreover, the statements were not unduly prejudicial, because they provided only enough detail to

11

supply context, and far less detail than the victim supplied in his trial testimony. The trial court did not abuse its discretion in admitting the challenged evidence.

But even if the evidence had been erroneously admitted, any error would have been harmless in this case. (See *People v. Manning* (2008) 165 Cal.App.4th 870, 880-881 [fresh complaint evidence, consistent with and cumulative of the victim's testimony, was harmless because the jury did not need to rely on the secondhand statements but was able to hear directly from the victim and judge the victim's credibility].)

VI

Finally, defendant contends the trial court improperly delegated the calculation of conduct credit to the Department of Corrections and Rehabilitation. The Attorney General agrees that the matter should be remanded to the trial court.

The trial court did not calculate defendant's conduct credit, indicating that conduct credit would be calculated by the Department of Corrections and Rehabilitation. But a trial court must calculate applicable conduct credits and ensure that the total credits are reflected in the abstract of judgment. (*People v. Donan* (2004) 117 Cal.App.4th 784, 789-790.) We will remand the matter to the trial court with directions to calculate defendant's presentence credit and amend the abstract of judgment.

DISPOSITION

The matter is remanded to the trial court with direction to calculate defendant's presentence credit, including his actual days, conduct days and total credit. The trial court is further directed to amend the abstract of judgment to reflect the award of presentence credit, and to deliver a certified copy of the amended abstract of judgment to

12

the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

                                                                               MAURO                , J.

We concur:

_____BUTZ_____, Acting P. J.

_____MURRAY_____, J.

13