[No. B163471. Second Dist., Div. Four. Apr. 8, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANKLIN NOE DONAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, and III of the DISCUSSION.

## COUNSEL

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Appellant Franklin Noe Donan was tried twice for first degree murder and attempted robbery. The initial judgment of conviction was reversed because of *Wheeler*[1] error. Upon retrial the jury convicted him of first degree murder with a special circumstance that it occurred during an attempted robbery. (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17).) He was also convicted of attempted robbery. (Pen. Code, §§ 664, 211.) It was found true that he used a firearm in connection with both crimes. (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5, subd. (a).) Appellant waived his right to a trial and admitted a prior conviction for assault with intent to commit rape. (Pen Code, § 220.) He was sentenced to life in prison without the possibility of parole, plus four years for the firearm enhancement on count 1. The court stayed the sentencing on count 2 pursuant to Penal Code section 654. Appellant was awarded credits for time spent in custody and good behavior.

Appellant appeals from the second judgment. He contends there was insufficient evidence to support the felony-murder special circumstance finding. Appellant also contends the trial court erred by imposing a firearm use enhancement for the second crime of attempted robbery because it was not specifically pleaded regarding that particular crime. He further argues that the court should have designated that the robbery was of the second degree because the jury failed to make a finding on the issue. Finally, appellant asserts that the trial court miscalculated his custody and conduct credits. We agree the robbery in count 2 should be designated as second degree. In the published portion of this opinion, part IV of the Discussion, we address the issue of credits, including the propriety of presentence conduct credits for the various stages of the proceedings before and after remand. We conclude the court did not err in granting presentence conduct credits for stages I and III and not stage II, but the court erred in calculating the amount of credits. Thus, upon remand we direct the trial court to amend the abstract of judgment accordingly. We otherwise affirm.

---

[1] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed statement of the relevant facts is included in our discussion of the issues on appeal. We briefly summarize the operative facts here.

The murder victim, Omar Hernandez, sold illegal narcotics. About a week before the shooting, appellant approached Hernandez and his friend Guadalupe (Lupe) Galindo and asked what drugs they were selling.

On July 16, 1997, appellant paged Galindo and told him that he wished to buy illegal drugs. Galindo told appellant to page Hernandez. After appellant paged Galindo again, an offer to buy drugs was apparently made. Hernandez picked up Galindo in his car and they met appellant at the same location where they had seen him the week before. Hernandez and appellant negotiated the sale of two "eights."[2] Appellant walked away from the car to get the purchase money. Hernandez and Galindo remained inside the car with the engine running. Seven to 10 minutes later appellant returned. He approached the driver's side of the car, pointed a gun at Hernandez and Galindo, and said "Give me everything that you have." Galindo was frightened and did not move. Hernandez got nervous and responded "Okay, okay, I'll give it to you, I'll give it to you." He began searching his pants pockets. Then he tried to escape. Hernandez put the car in reverse gear, and after going in reverse for a couple of feet, he stopped, quickly shifted gears, and began driving forward. Meanwhile, appellant stepped back and Galindo heard a gunshot. Hernandez drove away and said "he hit me, he hit me. Call 911." Eventually the car collided with a flower bed at a gasoline station. Galindo jumped out, called 911, and fled the scene because he was on probation and was therefore prohibited from associating with drug sellers or users. Hernandez died of the gunshot wound eight days later. Appellant fled the state, but was arrested later in Michigan, was extradited, and was brought back for trial.

Galindo was taken into custody for a probation violation on July 28, 1997. Galindo gave the police a description of appellant, but did not identify him by photograph until later.

On September 13, 2002, Galindo and appellant were inadvertently placed in the same lockup cell along with other inmates. Galindo spotted appellant's name on his identification bracelet and became very nervous and frightened. Appellant confronted Galindo and accused him of "squealing" on him. He took Galindo's copy of the Bible with the contact information for Galindo's friends and family written on the inside front cover, tore off the front cover,

---

[2] An "eight" or "eight ball" is a small quantity of heroin and cocaine or possibly crack cocaine alone.

and placed it in his pocket. According to Galindo, appellant said " 'don't you remember me?' And I said, no, I don't remember. [Appellant then said] 'You remember the black car from your friend, the one that I killed?' " Appellant threatened to kill Galindo and his family. Other inmates also confronted and harassed Galindo.

Appellant did not testify at trial. His primary theory of defense was that someone else shot Hernandez. During closing argument, appellant's counsel emphasized that Galindo did not actually see who shot the gun. Counsel argued that Galindo did not know who the actual shooter was, but decided to blame appellant for setting up the whole thing. Counsel also attacked Galindo's credibility and stressed that he had received benefits in exchange for his cooperation with law enforcement.

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

*Appellant's Credits*

On February 18, 2004, we filed our original opinion in this matter. Respondent filed a petition for rehearing solely on the issue of credits awarded to appellant. We granted rehearing and requested that the parties file further letter briefs addressing the recent case of *People v. Johnson* (2004) 32 Cal.4th 260 [8 Cal.Rptr.3d 761, 82 P.3d 1244] on the issue of credits. We further ordered "oral argument in this case is not necessary unless we deem it to be so after receiving the supplemental letter briefs." We do not deem further argument to be necessary.

Appellant was arrested on March 4, 1998,[4] and remained in custody until he was initially sentenced on November 9, 1999. On the latter date he was sentenced to life in prison without the possibility of parole, and was awarded a total of 718 days of credit. The 718 days included 625 days of actual

---

*See footnote, *ante*, page 784.

[4] While appellant contends that the March 4, 1998 arrest date stated on the probation report is erroneous and that he was actually arrested on February 23, 1998, he fails to include a record citation indicating that he was in fact arrested on that date. Instead, he asserts that it may be inferred based upon the trial court's sentencing calculations following the first trial that he was arrested on the earlier date. We decline to adopt this argument.

custody plus 93 days of good time or worktime credit calculated at a rate of 15 percent. Appellant successfully appealed and the clerk issued the remittitur on March 26, 2002.

Following his retrial and reconviction of the same crimes, appellant was sentenced again on December 6, 2002. The court sentenced him to life in prison without the possibility of parole and gave him presentence custody credits of 1,120 days calculated as follows: 718 original actual days (phase I)[5] plus an additional 256 actual days (phase III) after the filing of the remittitur for a total of 974 actual days, plus 146 days (15 percent) for good time or worktime (conduct credit). During the second sentencing the court assumed that the credits were initially calculated correctly, and as such gave appellant the "credits that he got the first time plus credits since the day of the remittitur." The court then ordered the Department of Corrections "to calculate additional custody credits while the defendant was incarcerated in the state prison." The trial court also found that defendant was incarcerated for a total of 1707 actual days. The abstract of judgment states that appellant received 974 total days of (actual plus conduct) credit, instead of 974 days of actual custody credit, plus 146 days of conduct credit.

## 1. *Presentence Conduct Credits*

"Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid," the trial court must calculate the actual time the defendant has already served and credit that time against "any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." (Pen. Code, § 2900.1.) "Defendants sentenced to prison for criminal conduct are entitled to credit against their terms for all actual days of presentence and postsentence custody [citations]." (*People v. Cooper* (2002) 27 Cal.4th 38, 40 [115 Cal.Rptr.2d 219, 37 P.3d 403].)

There are, however, "separate and independent credit schemes for presentence and postsentence custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30 [108 Cal.Rptr.2d 625, 25 P.3d 1103].) For custody before a sentence is imposed, persons detained in a county jail, or other equivalent specified local facility, a defendant may be eligible to receive, in addition to actual time credits under Penal Code section 2900.5, presentence good behavior or worktime credits. (Pen. Code, § 4019.) The trial court must

---

[5] Our Supreme Court designated four distinct phases for the sake of convenience in *In re Martinez* (2003) 30 Cal.4th 29 [131 Cal.Rptr.2d 921, 65 P.3d 411]. "Phase I is the period from the initial arrest to the initial sentencing. . . . Phase II is the period from the initial sentencing to the reversal. . . . Phase III is the period from the reversal to the second sentencing . . . , and phase IV is the period after the second and final sentencing." (*Id.* at p. 32.)

calculate the exact number of days the defendant has been in custody before sentencing, "add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment. [Citations.]" *(People v. Buckhalter, supra,* 26 Cal.4th at p. 30.)

"Once a person begins serving his prison sentence, he is governed by an entirely distinct and exclusive scheme for earning credits to shorten the period of incarceration. Such credits can be earned, if at all, only for time served 'in the custody of the Director.' [Citations.] . . . [E]ligible prisoners may shorten their determinate terms . . . by up to six months for every six months actually served by performing, or making themselves available for participation, in work, training or education programs established by the Director. (§ 2933.) Such prison worktime credits, once earned, may be forfeited for prison disciplinary violations and, in some cases, restored after a period of good behavior. (§§ 2932, 2933, subds. (b), (c).) Accrual, forfeiture, and restoration of prison worktime credits are pursuant to procedures established and administered by the Director. (§§ 2932, subd. (c), 2933, subd. (c).)" *(People v. Buckhalter, supra,* 26 Cal.4th at p. 31.)

While Penal Code section 2933.2 currently prohibits all conduct credit for murder, appellant murdered Hernandez before 1998 the year when section 2933.2 took effect. Penal Code section 2933.1 provides the same maximum percentage of 15 percent for both presentence and postsentence credit for violent felonies. (See Pen. Code, § 2933.1, subds. (a) [postsentence], (b) [presentence].)

The issue presented is the amount of presentence conduct credit appellant should receive pursuant to Penal Code section 4019 (section 4019 credits). The three cases pertinent to our discussion are *People v. Buckhalter, supra,* 26 Cal.4th 20 *(Buckhalter), In re Martinez, supra,* 30 Cal.4th 29 *(Martinez)* and *People v. Johnson, supra,* 32 Cal.4th 260 *(Johnson).*

Relying on *Martinez,* appellant contends the trial court erred by granting section 4019 credits only for phases I, the time from his arrest to the initial sentencing, and III, the time from remittitur after his reversal to his second sentencing. He urges the trial court should have granted section 4019 credits for all three phases, from the date of his arrest to his second sentencing. Based on *Johnson,* respondent argues the trial court should have granted section 4019 credits for phase I only. We disagree with both and conclude the trial court properly granted section 4019 credits for phases I and III.

In *Buckhalter,* the defendant was convicted of multiple felonies committed on a single occasion. He appealed his convictions, and the Court of Appeal remanded the case "on sentencing issues only." *(Buckhalter, supra,* 26 Cal.4th

at p. 22.) Buckhalter was transmitted from prison to county jail for the resentencing. Upon resentencing, the trial court granted section 4019 credits from the time of the arrest to the first sentencing and refused to grant credits for any time spent by defendant in county jail after remand. Defendant appealed contending he should have received additional section 4019 credits from the time of his remand to his second sentencing. The Court of Appeal disagreed and the Supreme Court granted review "limited to the issue whether 'a trial court must recalculate custody and conduct credits following remand upon resentencing.' " (*Buckhalter, supra,* 26 Cal.4th at p. 23.) The Supreme Court concluded: "[A]n appellate remand solely for correction of a sentence already in progress does not remove a prisoner from the Director's custody or restore the prisoner to presentence status as contemplated by section 4019. Clearly defendant is not entitled to section 4019 credits for his time in a state penitentiary. Nor could he earn them during the time he was physically housed in *county jail* to permit his participation in the remand proceedings. Section 4019 does allow such credits for presentence custody in specified city or county facilities. [Citation.] But defendant's temporary removal from state prison to county jail as a consequence of the remand did not transform him from a state prisoner to a local presentence detainee. When a state prisoner is temporarily away from prison to permit court appearances, he remains in the constructive custody of prison authorities and continues to earn sentence credit[s], if any, in that status. [Citations.]" (*Buckhalter, supra,* 26 Cal.4th at pp. 33–34, italics in original.)

In *Martinez,* the defendant was convicted of petty theft with priors. Because the conviction was a third strike, she was sentenced to state prison for 25 years to life. Her conviction was reversed on habeas corpus due to ineffective assistance of counsel, and the matter was remanded to the trial court. Upon remand, the defendant pled guilty, the trial court struck one of her prior convictions, and then resentenced her as a "second striker." (*Martinez, supra,* 30 Cal.4th at p. 32.) It granted section 4019 credits for phases I and III, but not for phase II, the time defendant spent in prison between her initial sentencing and remand after her successful habeas corpus petition. Relying on the reasoning of *Buckhalter,* the Supreme Court concluded she was not eligible for section 4019 credits for phase II because she was a state prison inmate during that time, notwithstanding the fact her conviction had been reversed. (*Martinez, supra,* 30 Cal.4th at pp. 35–36.)

In *Johnson,* the defendant was found guilty of two counts of vehicle theft. On May 27, 1999, the trial court sentenced the defendant to state prison. On June 18, 1999, the trial court recalled defendant's sentence and commitment pursuant to Penal Code section 1170, subdivision (d).[6] On June 28, 1999, the defendant was resentenced to state prison. The trial court refused to grant

---

[6] "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the

defendant section 4019 conduct credits for the period between May 27, 1999, and June 28, 1999. That was the issue before the Supreme Court. It concluded that the trial court's recall of defendant's sentence was similar to the limited remand in *Buckhalter* and therefore he was not entitled to section 4019 credits. (*Johnson, supra,* 32 Cal.4th at pp. 267–268.)

Here, there was no limited recall ordered by the Court of Appeal, as in *Buckhalter*, and no recall of a sentence by the trial court, as in *Johnson*. Appellant's original conviction was reversed, as in *Martinez*. Respondent contends that *Martinez* is not applicable to the issue before this court because it addressed section 4019 credits for only phase II. It is true that the issue decided by the Supreme Court was whether such credits are available in a phase II commitment, but the sentence given in *Martinez* included section 4019 credits for phases I and III. The Supreme Court noted: "The parties do not dispute that petitioner should accrue credits as a presentence inmate for phases I and III (see § 4019), and they likewise agree that petitioner should accrue credits as a postsentence second striker for phase IV." (*Martinez, supra,* 30 Cal.4th at p. 32.)

■ From these authorities, we conclude that appellant is entitled to receive section 4019 conduct credits for phases I and III, but, pursuant to *Martinez*, he is not entitled to receive section 4019 credits for phase II. It is up to the Department of Corrections to decide what conduct credits are received for phase II. (*Buckhalter, supra,* 26 Cal.4th at p. 31; *People v. Chew* (1985) 172 Cal.App.3d 45, 49–51 [217 Cal.Rptr. 805], disapproved on other grounds by *Buckhalter, supra,* at pp. 38–40.) Judicial intervention is inappropriate unless and until appellant first exhausts available administrative remedies. (*People v. Chew, supra,* at p. 52.)

### 2. *Total Credits*

Appellant also maintains that he has been in custody for 1748 days instead of 1707 days, as calculated by the trial court. We find that neither the trial court nor appellant's calculation of the actual days of incarceration is correct.

Citing *People v. Acosta* (1996) 48 Cal.App.4th 411 [55 Cal.Rptr.2d 675], the People assert that appellant waived the issue of custody credits by not

Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The resentence under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served." (Pen. Code, § 1170, subd. (d).)

raising it in the trial court. *Acosta* addresses Penal Code section 1237.1 and concludes preclusions of appellate issues apply only if there is no other issue argued. (See *People v. Mendez* (1999) 19 Cal.4th 1084, 1100 [81 Cal.Rptr.2d 301, 969 P.2d 146]; *People v. Duran* (1998) 67 Cal.App.4th 267, 269 [78 Cal.Rptr.2d 884].) That is not the case here.

The record reflects that appellant was arrested on March 4, 1998, and his final sentencing took place on December 6, 2002. Based upon these two dates, appellant was entitled to 1739 days of actual custody credits: 303 days for 1998, 365 days for 1999, 366 days for 2000, 365 days for 2001, and 340 days for 2002. We shall order the abstract of judgment to be corrected to reflect 1739 days actual credit.

In summary, the presentence conduct credits should have been calculated as follows: 15 percent multiplied by 616 for 92 days of phase I conduct credit, and 15 percent multiplied by 256 for 38 days of phase III conduct credit. The abstract of judgment should be ordered corrected to reflect a total of 130 days of presentence conduct credits.

## DISPOSITION

The judgment is modified and affirmed as modified. The trial court is directed to amend the abstract of judgment to reflect that defendant is convicted of second degree attempted robbery. The abstract of judgment shall also be modified to reflect 1739 days of actual custody credits and 130 days of conduct credits, without prejudice to appellant's right to have the Department of Corrections determine appropriate behavior and worktime credits earned during phase II. Thus, the abstract of judgment shall reflect 1869 days of total credits.

Epstein, Acting P. J., and Curry, J., concurred.