Filed 5/18/16  P. v. Rutigliano CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACK RUTIGLIANO,<br><br>    Defendant and Appellant. | 2d Crim. No. B262827<br>(Super. Ct. No. KA105796)<br>(Los Angeles County) |

Jack Rutigliano appeals his conviction by jury for dissuading a witness from reporting a crime (Pen. Code, § 136.1, subd. (b)(1))[1], corporal injury on a girlfriend resulting in traumatic condition (§ 273.5, subd. (a)), and assault with force likely to cause great bodily injury (§ 245, subd. (a)(4).)  Appellant admitted suffering two prior strike convictions (§§ 667, subds. (b)- (i); 1170.12, subds. (a) - (d)) and two prior serious felony convictions (§ 667, subd. (a)(1)), and was sentenced to 43 years to life.  Appellant contends that a pattern instruction on witness out-of-court statements (CALCRIM 318) violated his due process rights and the trial court erred in calculating presentence credits.  We modify the judgment to reflect that appellant was awarded 300 days actual custody plus 150 conduct credits, and affirm the judgment as modified.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*Facts and Procedural History*

On May 7, 2014, appellant broke into Angela H.'s house at five in the morning and choked her while she was asleep. Appellant, an ex-boyfriend, attempted to strangle Angela, grabbed her arms, and threw her on the floor. Angela tried to call 911 but appellant grabbed the cell phone and smashed it.

Angela's 16-year-old daughter saw appellant choking Angela and called 911. Angela's 13-year-old son entered the bedroom with a bat and chased appellant out of the house.

Los Angeles County Deputy Sheriff Christopher Lee responded to the 911 call and saw finger marks on Angela's neck, red marks on her arms, and redness and a small cut on her ankle. Angela said that appellant tried to strangle her, grabbed her arms and threw her to the ground, and smashed her cell phone.

At trial, Angela recanted and testified that nothing physical happened. Angela said that she called the police because she was frustrated about her relationship with appellant and thought the police would ask him to leave. Audio tapes were played to the jury in which appellant called Angela from jail and discussed how Angela and the children should change their testimony.

*CALCRIM 318*

The jury was instructed: "You heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] AND [¶] 2. As evidence that the information in those earlier statements is true." (CALCRIM 318.) Appellant claims that the instruction violates his due process rights and imposes a mandatory presumption that Angela's out-of-court statements were true. The argument has been rejected by every court that has considered it. "CALCRIM No. 318 informs the jury that it may reject in-court testimony if it determines inconsistent out-of-court statements to be true. By stating that the jury 'may' use the out-of-court statements, the instruction does not require the jury to credit the earlier statements even while allowing it to do so. [Citation.] Thus, we reject defendant's

2

argument that CALCRIM No. 318 lessens the prosecution's standard of proof by compelling the jury to accept the out-of-court statements as true." (*People v. Hudson* (2009) 175 Cal.App.4th 1025, 1028; see *People v. Tuggles* (2009) 179 Cal.App.4th 339, 365-366 [CALCRIM 318 properly instructs that jury may consider inconsistencies between out-of-court statements and in-court testimony in determining whether witness's statements are trustworthy]; *People v. Felix* (2008) 160 Cal.App.4th 849, 859 [CALCRIM 318 does not implicate defendant's substantial rights].)

` Appellant argues that CALCRIM 318 instructs that a witness's out-of-court statements are presumed to be true. We must give jury instructions a commonsense reading. (*People v. Golde* (2008) 163 Cal.App.4th 101, 118.) The instruction told the jury it may, if it wishes, consider a witness's out-of-court statement, for both the truth of the matter asserted and to assess the witness's credibility. That is a correct statement of the law. (See Evid. Code, § 1235 [codifying prior inconsistent statement exception to hearsay rule and providing such statement may be considered for the truth of the matter asserted]; *People v. Hudson, supra*, 175 Cal.App.4th at pp. 1028-1029.) By stating that the jury "may" use the out-of-court statement, the instruction does not require the jury to credit the earlier statement. (*Id.*, at p. 1028.) There is no merit to the argument that CALCRIM 318 lessens the prosecution's standard of proof or compels the jury to accept an out-of-court statement as true.

In the alternative, appellant argues that CALCRIM 318 "disallows" the jury from finding that the out-of-court statement is false and creates a burden-shifting presumption that favors the prosecution. We reject the argument because no reasonable juror would construe the instruction in the manner asserted by appellant. The correctness of jury instructions is to be determined from the entire charge of the trial court, not from a consideration of parts of an instruction or from a single instruction considered in isolation. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.) "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." (*Middleton v. McNeil* (2004) 541 U.S. 433, 437 [158 L.Ed.2d 701, 707].) Here the trial court gave additional instructions that the jury was free to ignore the

3

out-of-court statement it found to be untrustworthy. (CALCRIM 226 and 318.) The jury was instructed that "[y]ou alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience." (CALCRIM 226.) The trial court instructed: "You may believe all, part, or none of any witness's testimony" and that "[i]n evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." (CALCRIM 226.)

The jury was instructed that, in evaluating a witness's testimony, it can consider: "Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?" and "Did the witness admit to being untruthful?" (CALCRIM 226.) The jury was instructed to consider the witness's character for truthfulness and "[d]o not automatically reject testimony just because of inconsistencies or conflicts." (CALCRIM 226.) It was instructed that "[i]f you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe." (CALCRIM 302.) The jury was instructed on reasonable doubt and that "you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM 220.)

CALCRIM 318, when considered in conjunction with the other instructions "negates the possibility, imagined by [appellant], that the jury would believe itself bound to rely on out-of-court statements that it found noncredible." (*People v. Hudson, supra*, 175 Cal.App.4th at p. 1029.) Simply stated, CALCRIM 318 instructs that the jury can believe a witness's out-of-court statement to be true if the jury so chooses. It is a correct statement of the law and is clarified by the other instructions informing the jury of its prerogative to ignore any evidence found to be untrustworthy. "Read as a whole, the instructions did not lessen the prosecution's burden of proof by elevating out-of-court statements to unquestionable reliability." (*People v. Hudson, supra*, 175 Cal.App.4th at p. 1029.)

4

Appellant argues that, but for the CALCRIM 318 instruction, it is reasonably likely that he would have obtained a more favorable verdict. "[A] reviewing court generally only evaluates the strength of the evidence considered by the jury in assessing the prejudicial effect of an impermissible burden-shifting presumption, which may have had a comparatively minimal impact on the verdict." (*People v. Kobrin* (1995) 11 Cal.4th 416, 428, citing *Yates v. Evatt* (1991) 500 U.S. 391, 403-406 [114 L.Ed.2d 432, 448-450].)

Appellant argues that there are no discernible finger marks in the victim photos and that no one else in the family witnessed the assault. Officer Lee testified that Angela's neck was "very, very red" and that he saw finger marks consistent with being strangled. The officer stated that "the picture doesn't accurately depict the injuries because you can't see the finger marks around the neck." "The redness that you see in the photograph is not what I saw in person, because it was much more red . . . ." Officer Lee described the injuries: "There was extreme redness around her neck and throat area. There was redness around her arm . . . . She also had some redness and a small cut to . . . her ankle."

Angela told Officer Lee that appellant broke into the house, tried to strangle her in her sleep, and threw her to the ground. She said that her son entered the bedroom with a baseball bat and chased appellant out of the house. These statements were corroborated by the daughter who saw appellant choking Angela, "hitting her, [and] throwing her on the floor . . . ." The daughter and grandmother (Christine) both reported that Angela's son (Ezra) chased appellant out of the house with a bat. Angela was glad that her son saved her and told a probation officer that she suffered $1,300 in losses due to a broken door window, a damaged cell phone, and a broken computer screen. The alleged error in giving CALCRIM 318 was harmless when considered in the context of the other instructions and overwhelming evidence that appellant broke into the house and inflicted corporal injury on the victim.

5

*Presentence Credits*

Appellant contends, and the Attorney General agrees, that the trial court erred in awarding presentence credits. Appellant was arrested on May 8, 2014 and sentenced March 3, 2015, a period of 300 days in custody. He was awarded 296 days custody credit and is entitled to credit for all days of actual custody, i.e., 300 days. (§ 2900.5, subd. (a); *People v. Donan* (2004) 117 Cal.App.4th 784, 789.)

Appellant was awarded 44 days conduct credit pursuant to section 2933.1 which limits conduct credits to 15 percent of actual time served where the defendant is convicted of a violent felony described in section 667.5, subdivision (c). (See § 2933.1, subd. (a).) The Attorney General concedes that appellant was not convicted of any felony offense listed in section 667.5, subdivision (c). Appellant is accordingly entitled to 300 days actual custody plus 150 days conduct credit. (§§ 2900.5, subd. (a); 4019, subdivision (f).)

*Conclusion*

The judgment is modified to reflect that appellant was awarded 300 days actual custody plus 150 days conduct credit, for a total of 450 days presentence credit. The clerk of the superior court is directed to amend the March 3, 2015 sentencing minute order and abstract of judgment to reflect the award of 450 days presentence credits and to forward certified copies to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

6

Mike Camacho, Judge

Superior Court County of Los Angeles

_____

Gloria C. Cohen, under appointment by the Court of Appeals for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.