Filed 11/10/25  P. v. Varela CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID VARELA,<br><br>     Defendant and Appellant. | H052583<br>(Monterey County<br> Super. Ct. No. SS000907A) |

The procedural posture of this matter is not unfamiliar.  Twenty years after appellant David Varela's sentence in 2004 became final, the California Department of Corrections and Rehabilitation (CDCR) notified the trial court of a potential error in the award of Varela's custody credits.  The Attorney General and Varela now acknowledge the custody credits award was erroneous when entered, yet neither pursued correction in the years that followed.  In 2024, after receipt of the CDCR letter, the trial court declined to recall Varela's sentence under Penal Code section 1172.1,[1] but it nonetheless entered an order to modify the abstract of judgment according to CDCR's letter, reducing Valera's credits from 1,618 days to 383 days.

On appeal, Varela argues that by modifying the abstract of judgment, the trial court necessarily exercised jurisdiction—whether pursuant to section 1172.1 or through

_____

[1] All section references are to the California Penal Code unless otherwise noted.

its authority on extraordinary writ—thereby entitling him to the benefit of a full resentencing under the current sentencing laws.

We conclude the trial court lacked fundamental jurisdiction to modify Varela's sentence. The court's order is therefore void. We exercise our discretion to construe Varela's appeal, in part, as a petition for writ of habeas corpus to vacate the order. We grant the petition and direct the trial court to vacate the void order and reinstate the prior sentence contained in the abstract of judgment filed on October 30, 2018. (See *People v. Singleton* (2025) 113 Cal.App.5th 783.) We dismiss the remainder of Varela's appeal for lack of jurisdiction.

What is unusual here is that the reinstated sentence operates to Varela's benefit. As the parties acknowledge, the correct calculation would have yielded Varela's sentence 1,613 days of custody credits, rather than the 1,618 days reflected in the October 30, 2018 abstract of judgment. The Attorney General urges, in the interest of judicial economy, that we treat the discrepancy as a clerical error and amend the judgment to 1,613 days to conform with the parties' concession on appeal. However, jurisdictional limits cannot be set aside for the sake of efficiency. As explained below, our authority rests on law and the law does not empower us to modify the judgment in the manner the Attorney General proposes on this appeal.

## I.     FACTS AND PROCEDURAL BACKGROUND

### A. Conviction and Sentencing in 2001

Varela was convicted by a jury in 2001 for crimes committed when he was 17 years old, including armed robberies resulting in injuries to multiple people. On April 5, 2001, the court sentenced Varela to 25 years to life with the possibility of parole plus a determinate term of 46 years. The court awarded Varela 383 actual days plus 57 conduct

credits pursuant to section 2933.1 for a total of 440 days. Varela appealed, and the convictions were reversed due to the improper replacement of a juror.[2]

### B. *Plea and Sentencing in 2004*

On remand, Varela entered a plea of guilty to one count of second degree robbery and admitted he personally and intentionally discharged a firearm causing great bodily injury (§§ 211, 12022.53, subd. (d)) and one count of first degree residential robbery and admitted he personally used a firearm (§§ 212.5, subd. (a), 12022.5, subd. (a)). Varela stipulated to a prison term of 30 years to life with the possibility of parole consecutive to a determinate term of four years and eight months.

On May 6, 2004, the court sentenced Varela to a total term of 34 years and eight months to life with the possibility of parole, comprised of five years for the second degree robbery conviction with a consecutive term of 25 years to life for the attendant firearm enhancement and a consecutive term of four years for the first degree robbery conviction plus eight months for the related firearm enhancement.

The probation department filed a supplemental report noting Varela had served an actual 1,509 days and earned 109 conduct credits pursuant to section 2933.1 for a total of 1,618 days. According to the May 6, 2004 minute order and the abstract of judgment, the court awarded credits in the amount of 1,509 actual days plus 226 conduct credits for a purported total of 1,618 days. The parties acknowledge that on its face this calculation is incorrect as 1,509 plus 226 equals 1,735 total days, not 1,618 days. Without a court reporter's transcript from the 2004 hearing, it is unknown if this miscalculation was the result of an error in recordation as well as in rendition of the sentence.

---

[2] A more detailed description of the evidence presented at Varela's trial appears in our opinion of his prior appeal. (*In re Varela* (April 25, 2003, H022985) [nonpub opn.].) Because Varela's appeal does not turn on the evidence previously summarized in that opinion and is not relevant to the resolution of the claims on appeal, we limit the operative facts here and focus on the procedural background.

### C. 2018 CDCR Letter

On October 12, 2018, a correctional case records analyst from CDCR notified the court of potential errors in the sentence for Valera's first degree robbery conviction. The letter made no reference to any errors in the calculation of Valera's custody credits.

In response, on October 20, 2018, the court amended the 2004 minute order and issued an abstract of judgment "nunc pro tunc" to reflect the sentencing corrections noted in CDCR's letter. The court modified the sentencing terms for Valera's first degree robbery conviction, but the total aggregate sentence remained unchanged at 9 years and 8 months determinate term plus 25 years to life with the possibility of parole. The trial court did not make any changes to Valera's custody credits. Thus, the abstract of judgment filed on October 30, 2018 continued to reflect 1,618 days for Valera's custody credits, consisting of 1,509 actual days and 226 conduct days.

Based on the record before us, neither the Attorney General nor Varela raised any objections to the court's actions upon receipt of the CDCR letter in 2018 and neither appealed the court's 2018 order modifying Varela's sentence. We do not address whether the court had jurisdiction to modify the abstract of judgment in 2018.

### D. 2024 CDCR Letter

Almost six years later, on March 20, 2024, another correctional case records analyst from CDCR sent a second letter requesting the court review its record, noting for the first time that Valera's custody conduct credits appeared to have been incorrectly calculated in 2004.

Specifically, the analyst stated that the abstract of judgment and minute order "may be in error, or incomplete" because they reflect "a total of 1,618 credits (1509 actual and 226 local conduct)." The original sentence entered in 2001 "granted a total of 440 days (383 actual and 57 local conduct)." The analyst noted that "the trial court should only compute the actual time spent," and "[i]t is the responsibility of the [CDCR] to determine the amount of worktime credit to which an inmate is entitled from the date

4

of the initial sentencing." The analyst further stated, "[d]ue to numerous disciplinary actions the defendant has lost many days of CDCR conduct credit." The analyst noted that the "amended Abstract should reflect the original local conduct credits and the CDCR will apply the appropriate amount of behavioral credits." The analyst concluded with a request for the court to "review your file to determine if a correction is required," and, citing to *People v. Hill* (1986) 185 Cal.App.3d 831, the analyst claimed that when notified "that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices."

On March 22, 2024, in response to the CDCR letter, the court received a request from Varela to recall and resentence him pursuant to section 1172.1.[3] The court declined to recall the sentence but set the case for a hearing to address CDCR's letter regarding corrections to Valera's custody credits.

Each party filed moving papers and supplemental briefs supporting their positions. The prosecution and Varela both acknowledged that the trial court's May 6, 2004 custody credit award, restated in the amended October 30, 2018 abstract of judgment, was erroneous based on the court's misapplication of the law—a judicial error. Varela argued that the error, as pointed out in the CDCR letter, made his sentence "illegal," requiring recall and resentencing under the current law, including a transfer of the case to the juvenile court because the crimes occurred while he was a minor. The prosecution argued that the CDCR letter was not a recommendation by the CDCR secretary for recall and resentencing pursuant to section 1172.1 and, therefore, Valera was not entitled to a resentencing. The prosecution contended that since the judgment became final in 2004, the court lacked jurisdiction to correct the custody credits. Because the error was a

---

[3] Because Varela was a minor at the time of the crimes, he also filed a petition for recall and resentence under section 1170, subdivision (d)(1) and a motion to augment the record pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. The court denied the section 1170 petition and set the *Franklin* motion for a later hearing. Varela did not appeal the court's rulings and they are not at issue on this appeal.

5

judicial one, and not clerical, the prosecution claimed it was beyond the trial court's inherent authority to correct.

### E. September 24, 2024 Hearing

At the hearing on this issue on September 24, 2024, Varela and the prosecution argued that the trial court lacked jurisdiction to correct the credits without recalling the sentence, however, Varela requested that the court recall the sentence and the prosecution urged the court not to do so.

The court held that it did not have jurisdiction to recall the sentence because CDCR did not recommend a recall, stating "[r]ather, we have a letter from a records analyst, who is responsible for reviewing custodial credits of inmates. This letter merely requests the Court to correct the judicial error and properly appoint good-time credits at the time of the sentencing of the petition. [¶] The whole point of that is petitioner's conduct in prison post sentencing would affect his good-time credits, and CDCR wants to address it." The court stated it was "also aware of its authority under [section] 1172.1 and declines to act on its own motion [to recall the sentence]."

The court then indicated it would "correct the credits on the abstract to state only the actual credits earned at the time of sentencing, and CDCR will apply the appropriate number of behavioral credits." The court awarded only actual days of credit from booking through the original sentencing date of 383 days and no other conduct credits. An amended abstract of judgment reflecting the change in credits was prepared and filed on October 14, 2024.

Varela appealed the September 24, 2024 order modifying the abstract of judgment and the court's denial of his request for recall and resentencing.

## II. DISCUSSION

Varela makes two arguments on appeal. First, the trial court erred in calculating his actual and conduct custody credits. Secondly, when the court amended the abstract of

6

judgment, he contends the trial court necessarily exercised jurisdiction over the matter but erred in failing to recall and resentence him and transfer his case to juvenile court.

As to the first contention, both parties agree that the trial court erred in awarding Varela only the original actual days of credit with zero conduct credits and that he was entitled to 1,509 actual days and 104 days of conduct credits per section 2933.1 for a total of 1,613 days of credit. On this point, the parties acknowledge that the court's award of custody credits, from the original sentencing to now, were all incorrect.

They disagree as to whether the trial court had jurisdiction to correct the custody credit award. Varela argues the court had jurisdiction, whether under section 1172.1 or because his sentence was unauthorized (in light of the undisputed custody credit errors) which he claims the court had authority to correct at any time.[4] The Attorney General, in contrast to the position of the prosecution in the trial court, now assert that the trial court had authority to correct the custody credit award as a clerical error, which would not require a new sentencing hearing.[5] In the alternative, if we conclude the court's incorrect credit award was a judicial error, the Attorney General concedes the court did not have jurisdiction to fix the error and the September 24, 2024 order should be vacated. However, the Attorney General requests that we treat the appeal as a petition for writ of habeas corpus and "fix the credits error" to reflect the parties' concession on appeal that

---

[4] Varela argued in favor of the court's jurisdiction because if the court resentenced and recalled his case, he contends the judgment would be rendered non-final. Pursuant to Proposition 57, because Varela was a minor who was directly charged in adult court, if the court recalled his sentence and rendered it non-final, Varela contends he would be entitled to a new transfer hearing in juvenile court. (*People v. Padilla* (2022) 13 Cal.5th 152.)

[5] Varela did not invoke judicial estoppel nor invite error in response to the Attorney General's contention on appeal that the error was a clerical error, despite the prosecution's prior position in the trial court that it was a judicial error. (See *People v. Hampton* (2022) 74 Cal.App.5th 1092, 1102–1103.) We therefore consider the Attorney General's contention.

the correct credit should be 1,613 days of custody credits (1,509 actual credit and 104 conduct credits).

For the reasons stated below, we are not persuaded by either party's contention.

### A.    *Presentence Credit Errors*

We begin with a discussion of the presentence credit calculations in this case. Both parties agree the court erred in calculating the credits in 2001, 2004, and 2024, and we concur.

As noted by the Supreme Court in *People v. Buckhalter* (2001) 26 Cal.4th 20, 28-29, "When considering the issue presented, we must admonish at the outset that application of the complex statutory sentence-credit system to individual situations ' "is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. [Because] there is no simple or universal formula to solve all presentence credit issues, our aim [must be] to provide . . .a construction [of the statutory scheme] which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." ' [Citations]."

"There are . . .'separate and independent credits schemes for presentence and postsentence custody.' " (*People v. Donan* (2004) 117 Cal.App.4th 784, 789, quoting *People v. Buckhalter, supra,* 26 Cal 4th at p. 30.) The Supreme Court has designated four separate phases. (*In re Martinez* (2003) 30 Cal.4th 29 (*Martinez*).) In Phase I, at the time of sentencing, the court must calculate the time a defendant has been in custody until the date of sentencing, add the applicable conduct credits and reflect the total in the judgment. (*Id*. at p. 32; §§ 2900.5, subd. (d), 2933.1(c).) Phase II includes the time from the initial sentencing to the remittitur. (*Martinez, supra,* at p. 32.) Phase III covers the interval from the reversal of the judgment by the appellate court to the second sentencing and Phase IV is the period after the second sentencing. (*Ibid.)*

In Phase II, when the defendant is in the custody of the CDCR, "[t]he CDCR is responsible for calculating a defendant's postsentence credits." [Citation.]" (*People v. Dean* (2024) 99 Cal.App.5th 391, 397). It is CDCR who "calculates and applies [the actual time and the] conduct credit for the time following the original sentencing hearing. [Citation.]" (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.) In Phase III, when the original judgment is reversed by a reviewing court, the trial court is directed to credit the actual time the defendant served from the date of the reversal to the date of the resentencing because the case is transformed into presentence custody. (§ 2900.1; *Martinez, supra,* 30 Cal.4th at p. 32, *People v. Donan, supra,* 117 Cal.App.4th at p. 792). The court must calculate the conduct credits only for the time between the remittitur and the resentencing. (*Buckhalter*, *supra* 26 Cal.4th at p. 23.) In Phase IV, when the defendant is returned to CDCR's custody after a reversal and resentencing, CDCR will then begin calculating both actual days and any other additional credits from the date of the resentencing. (*Martinez,* at p. 37.)

Here, the court erred in the calculations of Varela's custody credits at the original sentencing in 2001, again after remand in 2004[6], and once more following CDCR's 2024 letter—an error likely compounded by CDCR's delays and errors in its calculations and reporting of Valera's credits.

First, the trial court incorrectly calculated Varela's credits in Phase I, the original sentencing. Varela was entitled to all of the actual days of credit from the original booking to the sentencing upon his plea of guilt. The trial court awarded Varela 383 actual days plus 57 conduct credits for a total of 440 days. However, Varela was in local custody from March 20, 2000, to April 5, 2001. Both parties now agree Varela served *382* actual days and earned 57 conduct credits per section 2933.1 for a total of *439* days.

---

[6] As previously noted, the abstract of judgment also included a mathematical error in the award of the custody credits.

Second, at resentencing on May 6, 2004 (Phases II and III), the trial court awarded Varela 1,509 actual days and 226 conduct credits for a total of 1,618 days, which the parties now agree was also in error.  Between the date of April 6, 2001, and remittitur on June 25, 2003, Varela served *811* actual days in the custody of the CDCR.  Only CDCR may calculate the conduct credits for those dates.  (*People v. Dean*, *supra*, 99 Cal.App.5th at p. 397).  Due to the reversal and remittitur, Varela began earning presentence custody credits again on June 26, 2003, to the date of the resentencing on May 6, 2004, for a total of *316* actual days plus *47* conduct credits.  Thus, on the date of resentencing, Varela should have been awarded 1,509 actual days (698 of those presentence days and 811 in the custody of the CDCR) and 104 presentence custody credits for a total of *1,613* days, not 1,618 days.  It was this miscalculation that CDCR's second letter in 2024 sought to address.  On September 24, 2024, however, in response to CDCR's second letter, the court awarded Varela 383 actual days and no conduct credits.

The record reflects that the custody credits awarded at each stage of the proceedings were incorrectly calculated and in 2004, also incorrectly reported.  Yet, neither party (nor the CDCR) challenged these errors for nearly two decades, until the court's modification order of September 24, 2024, which is the only order before us on appeal.

### B.    Trial Court's Jurisdiction to Correct the Error

Although the credits were incorrectly calculated and incorrectly reported, the fundamental questions remain: did a letter from CDCR notifying the court of a potential error create jurisdiction for the trial court to correct the credits[7], and if not, did the court have another basis for jurisdiction to correct the credits?

---

[7] In this case, the purpose of CDCR's letter was not to award additional credits to Varela, but to ensure CDCR could exercise all of its authority to forfeit Varela's conduct credits during Phase II.

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced. [Citations.]" (*People v. Karaman* (1992) 4 Cal.4th 335, 344.) Once the case is final, the "court can modify the sentence only if the court has jurisdiction under section 1172.1 or another authorizing statute, or by the filing of a petition for a writ of habeas corpus,"[8] or to correct a clerical error, (*Singleton*, *supra*, 113 Cal.App.5th at pp. 788, 791.) or to modify an unauthorized sentence when the error is apparent from the record. (*People v. Codinha* (2023) 92 Cal.App.5th 976, 990 (*Codinha*).) We discuss each of these exceptions below and conclude none apply to the case at hand.

### 1. Jurisdiction Under Section 1172.1

Section 1172.1 provides, in relevant part, "the court may, on its own motion, within 120 days of the date of commitment or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law, at any time upon the recommendation of the [CDCR] secretary . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, . . . and provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).) Whether the court exercises its discretion to recall a sentence because of a change in the law or upon the recommendation of CDCR, the new sentence must be no greater than the original sentence and the trial court "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subds. (a)(1) & (a)(2); *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1090.)

---

[8] It is undisputed that Varela did not file a petition for writ of habeas corpus.

Historically, CDCR, through letters drafted by correctional case record managers and analysts, has notified courts of errors that it perceives to have been made by the trial court in the sentencing of an individual defendant. The letters can refer to clerical errors that need correction (an error in recording a judicial pronouncement) and judicial error (an error in the rendering the judgment). (*People v. Boyd* (2024) 103 Cal.App.5th 56, 64 (*Boyd*).) These letters often arrive years and sometimes even decades (as in this case) after the original sentencing. The letters usually include the following language: "When notified by the [CDCR] that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices." The letters also cite to *People v. Hill*, *supra* 185 Cal.App.3d 831, as authority for modifying the sentencing order and reconsidering the trial court's original sentencing decisions. In *Hill*, the appellate court held "We see no reason why this reasoning should not apply where, as here, the Department of Corrections rather than the Court of Appeal notifies the trial court of an illegality in the sentence. The trial court is entitled to rethink the entire sentence to achieve its original and presumably unchanged goal. Furthermore, there is no contradiction between viewing an aggregate sentence as a whole and the language of section 1170, subdivision (d) [now section 1172.1] which permits resentencing." (*Id.* at p. 834.) "The CDCR recommendation furnishes the court with jurisdiction it would not otherwise have to recall and resentence and is 'an invitation to the court to exercise its equitable jurisdiction.' [Citation.]" (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.) These CDCR letters have caused trial courts to make both clerical corrections and substantive sentencing modifications, often under the presumption that the letter creates jurisdiction pursuant to section 1172.1, subdivision (a)(1), for the court to address sentencing in a case that has long been final.

Varela contends the second CDCR letter, by informing the trial court of the custody credits error, vested the trial court with jurisdiction to recall and resentence him under section 1172.1. Recently, appellate courts have scrutinized CDCR letters more

closely and held that, unlike a letter from the CDCR's Secretary or their authorized representative expressly requesting recall and resentencing, a letter from a CDCR analyst recommending the court to review its file does not confer jurisdiction under section 1172.1 to vacate or modify a sentence notwithstanding the long-standing practice of treating such letters as a jurisdictional basis. (See *Singleton*, *supra*, 113 Cal.App.5th at p. 787 ". . . the courts in these circumstances lack the fundamental jurisdiction to vacate or modify the sentence."]; *People v. Magana* (2021) 63 Cal.App.5th 1120, 1125-1126 ["CDCR did not recommend a recall, the trial court lacked authority to recall defendant's sentence"]; *Codinha*, supra, 92 Cal.App.5th at p. 987 [Because the CDCR did not recommend recall and resentencing in its letter and the record does not show that is what the trial court did in response to the letter, there was no jurisdictional basis under section 1172.1.].)

In the case at hand, the trial court received only a letter from the correctional analyst recommending a review of the court's file and the credit calculation. As the parties acknowledged in the trial court, the letter was not limited to a clerical error, but requested the court to review a potential judicial error in the computation and award of appellant's actual time and conduct credits. Therefore, contrary to Varela's contention, the second CDCR letter from a correctional case records analyst requesting a review of a potential judicial error was not sufficient to confer jurisdiction pursuant to section 1172.1. The trial court did not receive a letter from the CDCR Secretary recommending a recall and resentencing pursuant to section 1172.1. Moreover, the trial court acknowledged that the second CDCR letter did not confer jurisdiction: "This letter does not constitute a . . . recommendation by any authorized person." We agree and follow the recent line of cases holding that a letter such as this did not confer jurisdiction under section 1172.1 to the trial court to correct the judicial error.

As noted by both parties, the court could have chosen to exercise its jurisdiction to modify Varela's sentence, including his credits, pursuant to section 1172.1,

subdivision (a), if the sentencing laws at the time of Varela's original sentencing had changed.[9]  The trial court specifically declined to do so in this case, stating "The Court is also aware of its authority under 1172.1 and declines to act on its own motion."  Section 1172.1 does not compel the court to take action, even upon a request from a defendant.  To the contrary, the statute permits the court to take no action, "A defendant is not entitled to file a petition seeking relief from the court under this section.  If a defendant requests consideration for relief under this section, the court is not required to respond." (§ 1172.1, subd. (c); *People v. Hodge* (2024) 107 Cal.App.5th 985.)  Thus, the court neither exercised its discretion to recall and resentence Varela pursuant to section 1172.1, nor was the court required to do so upon Varela's request.

The trial court expressly found the CDCR letter did not confer jurisdiction under section 1172.1 and declined to act under that provision.  We are therefore unpersuaded by Varela's contention that, by correcting the judgment, the court inadvertently exercised discretion under section 1172.1, and therefore, he was entitled to a recall and full resentencing.  The court's amendment of the custody credit award did not result in an inadvertent exercise of jurisdiction.  As explained below, the trial court lacked authority to amend the custody credit award and thus its order was without fundamental jurisdiction and therefore void.  (*Singleton*, *supra*, 113 Cal.App.5th at p. 790.)

### 2.  *Clerical Error*

The Attorney General further contends that the court had authority to correct the judgment without exercising its jurisdiction to recall the sentence because it was fixing a clerical error.

"It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]  The power exists independently of statute and may be exercised in criminal as well as in civil

_____

[9] It is undisputed that there have been changes in the statutory and case law that are applicable to Varela's sentencing.

cases.. . . The court may correct such errors on its own motion or upon the application of the parties." (*Boyd*, *supra*, 103 Cal.App.5th at p. 63, citing *In re Candelario* (1970) 3 Cal.3d 702, 705.) A clerical error occurs when the record fails to accurately reflect the court's actual oral pronouncements. (*Boyd*, at p. 63.) In contrast, a court makes a judicial error when it errs during "the judicial process of determining the sentence, even if governed by mathematical rules (such as calculating credits)." (*Id.* at p. 64.) The correction of a clerical error by the trial court neither modifies the judgment nor necessitates a recall and resentencing as it does not affect the defendant's substantial rights but simply ensures the abstract of judgment reflects the court's actual oral orders. (*People v. Humphrey* (2020) 44 Cal.App.5th 371, 380.)

As the parties acknowledged in the trial court, the prior awards of Varela's custody credits were erroneous because the court failed to impose the sentence required by law. They also acknowledged that the inaccuracy reflected in the 2004 abstract of judgment, and restated in the 2018 amended abstract of judgment, did not arise only from a discrepancy between the record and the court's oral pronouncement, but from the court's own mistaken calculation of credits. Notwithstanding these concessions made in the trial court, without a court reporter's transcript from the 2004 sentencing proceedings (where the error in the custody credits purportedly originated) in the record on appeal, there is nothing to support the Attorney General's contention of a clerical error. Further, whether the trial court orally ordered 109 conduct days but erroneously recorded 226 days, or whether it ordered 1,735 days but erroneously recorded 1,618 days, is immaterial because under either scenario, the court's total credit calculation was still incorrect. (*Boyd*, *supra*, 103 Cal.App.5th at p. 64 [judicial error includes when the court errs in its calculation of credits].) As the parties concede on appeal, the correct custody credits award is 1,613 days comprised of 1,509 actual days and 104 conduct days. Accordingly, the court's September 24, 2024, modification did not constitute the correction of solely a

15

clerical error, and the court lacked authority to make that correction absent a valid jurisdictional basis.

### 3. *Unauthorized Sentence Doctrine*

Finally, we consider whether, in the absence of statutory authority, clerical error, or a petition for habeas corpus, the trial court had any alternative source of jurisdiction to correct the custody credits. Varela contends it did under the unauthorized sentence doctrine. A sentence is "unauthorized" if the sentence could not lawfully be imposed under any circumstance in the case. (*Boyd*, *supra*, 103 Cal.App.5th at p. 65.)

There is a split of authority on whether an unauthorized sentence gives the trial court independent jurisdiction to modify a final judgment at any time. (Compare *Boyd*, *supra*, 103 Cal.App.5th 56, 62 ["when a case is final, the mere fact that a sentence is unauthorized does not confer jurisdiction on a trial court to vacate that sentence"]; *Singleton, supra,* 113 Cal.App.5th at p. 796 [same] with *Codinha*, *supra*, 92 Cal.App.5th at p. 993 ["an unauthorized sentence is a void judgment that may be vacated or corrected whenever it is brought to the trial court's attention, even after execution of the invalid sentence has begun or the judgment has become final"].) We need not resolve that split of authority in this case because under either analysis, the trial court did not have jurisdiction[10].

The jurisdiction conferred by *Codinha* to correct an unauthorized sentence—and therefore, void judgment—is limited to specific circumstances: "A trial court that imposes a sentence unauthorized by law retains jurisdiction (or has inherent power) to correct the sentence at any time the error comes to its attention . . . *provided the error is*

---

[10] Regarding the apparent split in authority, the *Codinha* court observed: "Given the apparent frequency with which the [CDCR] sends a letter to a trial court notifying it of an unauthorized sentence and the inconsistency in the case law concerning the court's jurisdiction to modify a sentence once execution has begun or the judgment imposing the sentence has become final, it would be helpful to the lower courts for the Supreme Court definitively to decide the jurisdictional issue." (*Codinha*, *supra*, 92 Cal.App.5th at p. 993.) We agree.

16

*apparent from the face of the record.*" (*Codinha, supra,* 92 Cal.App.5th at pp. 990-991, italics added, fn. omitted*.*)  The court can only correct a judgment void on the face of the record if the " 'judgment-roll *demonstrates to the world its own invalidity*.' [Citation.]" (*Boyd*, *supra,* 103 Cal.App.5th at p. 68.).

In this case, it is undisputed that the prior amended abstracts of judgment and minute orders contain, on their face, incorrect mathematical calculations as to Varela's custody credits (1,509 plus 226 equals 1,735 total days, not 1,618 days).  On the face of the record provided in this case, however, the incorrect calculation alone did not establish the sentence to be unauthorized and void, as opposed to merely voidable.  (*Boyd*, *supra,* 103 Cal.App.5th at p. 71 [distinguishing between void and voidable judgments]; *People v. Lara* (2010) 48 Cal.4th 216, 225 [voidable judgment is "valid until set aside"].)  As noted, the record does not show whether this error was clerical or judicial error; however, this distinction is immaterial.  Except for the 1,509 actual days, whether the court meant 226 or 109 conduct days, or 1,735 or 1,618 total days, these numbers were all incorrect. The correct calculation is 104 conduct days and 1,613 total days as determined from the probation report in the context of the remittitur, amended abstracts of judgment, and minute orders.  The probation report alone included the actual dates of Varela's preconviction and postconviction incarceration.  While the abstracts of judgment, remittitur and minutes orders are public facing, the probation report is not and is generally not considered a public document.  (*Boyd,* at p. 68 [probation reports are "generally not public documents"].)  Just as the court found in *Boyd*, there is no judgment roll that could have made the invalidity of the sentence "self-evident to the public decades after the fact." (*Id.* at 69.)  Thus, whether we follow the precedent of *Codinha* or *Boyd*, the trial court lacked jurisdiction in this case to correct the award of custody credits as the error was not self-evident.

17

### C. Jurisdiction on Appeal

Since the trial court did not have jurisdiction to modify Valera's custody credits, the court's September 2024 order is nonappealable, and we dismiss the appeal. (*People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1124.) However, as the reviewing court in *Singleton* observed, when the dismissal of the appeal would be "manifestly unjust" because it would leave the erroneous order in place to the defendant's detriment, we may treat the defendant's appeal as a petition for writ of habeas corpus. (*Singleton*, *supra*, 113 Cal.App.5th at p. 798.)

Here, the parties agree that the court's September 24, 2024 order modifying the custody credit award to 383 days was in error, and that Valera is actually entitled to 1,613 days of custody credits. Dismissing Valera's appeal would leave him with a void order that deprives him of significant custody credits. Such a result would be manifestly unjust. We therefore exercise our discretion to treat the appeal, in part, as a petition for a writ of habeas corpus to vacate the September 24, 2024 order. We grant the petition and direct the trial court to reinstate Valera's prior sentence reflected in the amended abstract of judgment filed October 30, 2018 which reflects Valera's custody credits as 1,618 total credits (comprised of 1,509 actual days and 226 conduct days).

Notably, the parties concede that the custody credits reflected on the October 30, 2018 amended abstract of judgment are incorrect. The correct credits should be 1,613 days (comprised of 1,509 actual days and 104 conduct days). The Attorney General requests that, in the interest of judicial economy, we also treat Valera's appeal as a petition for writ of habeas corpus to "fix the credits error for which the parties both agree." The Attorney General argues that, unlike the defendant, they cannot file a writ of habeas corpus to fix a custody credit error and thus, they request that we treat the five days difference as a clerical error which the trial court has inherent power to correct.

For the same reason the trial court lacked jurisdiction to modify Valera's custody credits, we are also without jurisdiction to do so. Recasting the appeal as a habeas

18

petition, as the Attorney General requests, would result in Varela losing credits and extending his prison term, contrary to the purpose of habeas corpus. (See *Cox v. Superior Court* (2016) 1 Cal.App.5th 855, 859 [purpose of habeas corpus is to challenge unlawful imprisonment or restraint].) Absent a request from Varela, we cannot presume that was his desired course of action in this appeal. Further, neither party appealed the 2018 order modifying the judgment nor the October 30, 2018 abstract of judgment, which is the judgment the Attorney General now seeks to correct. Valera's notice of appeal in this case stated that he was appealing the order entered September 24, 2024. " 'We have no jurisdiction over an order not mentioned in the notice of appeal.' [Citation.]" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.) Although we are required to liberally construe criminal notices of appeal (Cal. Rules of Court, rule 8.304(a)(4)), it is beyond liberal construction to view an appeal from one order as an appeal from a different order. (*In re J.F., supra,* 39 Cal.App.5th at p. 76.)

We recognize that reinstating the 2018 sentence may afford Varela a windfall of at least five additional days of custody credit. However, both CDCR and the prosecution could have raised this issue before the sentence became final, yet neither did so, nor did the prosecution appeal from the court's prior sentencing orders in 2004 or 2018. We lack jurisdiction to modify the reinstated sentence, even though the custody credit award is now conceded to be erroneous and even if, as the Attorney General contends, they are left without remedy. " ' "The Legislature has determined that except under certain limited circumstances the People shall have no right of appeal in criminal cases." [Citations.]' " (*People v. Superior Court (Mitchell)* (2024) 17 Cal.5th 228, 244; § 1238 [listing appeals allowed by the prosecution].) "Courts must respect the limits on review imposed by the Legislature 'although the People may thereby suffer a wrong without a remedy.' " (*People v. Williams* (2005) 35 Cal.4th 817, 823) "The fact that the act of the trial court was without authority . . ., and thus was an act in excess of the trial court's jurisdiction in

19

itself cannot enlarge the right of appeal by the People." (*People v. Godfrey* (1978) 81 Cal.App.3d 896, 901.)

Nothing in our opinion, however, should be construed as limiting Valera's ability to challenge the October 30, 2018 sentence by writ of habeas corpus.[11] Our order vacating the September 24, 2024 order is also without prejudice to Valera, the prosecution, the trial court, or CDCR seeking to correct Valera's sentence through a lawful procedure.

### III.   DISPOSITION

We deem Varela's appeal from the September 24, 2024 order, in part, as a petition for a writ of habeas corpus to vacate the modified custody credit award, and we grant the petition. We direct the trial court to vacate the September 24, 2024 order and to amend the abstract of judgment to reflect that the prior sentence as reflected in the October 30, 2018 abstract of judgment is reinstated including the awarding of the custody credits of 1,618 total credits (comprised of 1,509 actual days and 226 conduct days). The superior court is ordered to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The remainder of Varela's appeal from the trial court's September 24, 2024 order is dismissed.

---

[11] We note, however, that even if Valera was awarded too many days of presentence credits, he would not be entitled to a full resentencing hearing. (*Boyd*, *supra*, 103 Cal.App.5th at pp. 73-74 [miscalculation of presentence custody and conduct credits measurable by days, not months or years, did not warrant a full resentencing].)

_____
RODRIGUEZ, J.*

WE CONCUR:

_____
DANNER, ACTING P.J.

_____
WILSON, J.

H052583
*People v. Varela*

_____

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.